```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                      CHARLESTON
```

**DONNA E. WHANGER,**

    **Plaintiff,**

**v.**                                  **CASE NO. 2:06-cv-00862**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security[1],**

    **Defendant.**


### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Brief in Support of Judgment on the Pleadings.

Plaintiff, Donna Whanger (hereinafter referred to as

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

"Claimant"), filed applications for SSI and DIB on April 13, 2004, alleging disability as of February 1, 2001, due to depression, panic attacks and back pain. (Tr. at 78-80, 82-83, 90, 122.) The claims were denied initially and upon reconsideration. (Tr. at 32-36, 48-50.) On February 21, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 55.) The hearing was held on December 7, 2005, before the Honorable Theodore Burock. (Tr. at 295-353.) By decision dated May 26, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 16-27.) The ALJ's decision became the final decision of the Commissioner on August 16, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 7-11.) On October 10, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R.

§§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work

experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic back pain, headaches, anxiety and depression.  (Tr. at 18.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 22.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 23.)  As a result, Claimant cannot return to her past relevant work.  (Tr. at 25.)   Nevertheless, the ALJ concluded that Claimant could perform jobs such as shirt presser, small products assembler and label remover, which exist in significant numbers in the national economy.  (Tr. at 26.)  On this basis, benefits were denied. (Tr. at 27.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was

defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was forty-five years old at the time of the administrative hearing. (Tr. at 299.) Claimant graduated from high school and cosmetology school. (Tr. at 302.) In the past, she worked as a beautician. (Tr. at 298, 320.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

5

Claimant was hospitalized from November 2, 1988, through December 2, 1988, and diagnosed with Guillain-Barre syndrome. Claimant developed a left pneumothorax, which was treated with closed thoracostomy tube. Claimant was discharged with continuous care and was instructed to return for physical and occupational therapy. (Tr. at 274.)

The record includes treatment notes from Mark Hughes, M.D. dated July 19, 1999, through February 5, 2001. On July 19, 1999, Dr. Hughes noted that Claimant has done relatively well since she stopped using drugs and alcohol. Claimant was doing well on medication. Dr. Hughes diagnosed major depressive disorder, recurrent, cocaine abuse and marijuana abuse, allegedly in remission. He instructed Claimant to continue taking Zoloft and Klonopin. (Tr. at 155-56.) On June 7, 2000, Dr. Hughes noted that Claimant was doing well. (Tr. at 154.) On September 5, 2000, Claimant was fairly overwhelmed and out of control. Claimant ran out of her Klonopin early. Dr. Hughes increased Claimant's dose of Klonopin and restarted Claimant on Zoloft. (Tr. at 153.) On February 5, 2001, Claimant's speech was rapid and her mood appeared euthymic. Dr. Hughes prescribed Effexor. (Tr. at 152.)

On March 15, 2004, Russ Voltin, M.D. examined Claimant. Claimant reported she had a good response to Effexor and liked Xanax because it helped her sleep. Claimant's affect was broad, and her mood was anxious. Her stream of thought was positive for

flight of ideas and looseness of association.  Claimant presented with symptoms of current mania.  Her cognitive abilities were poor.  Claimant's judgment was intact, but her insight was poor.  Dr. Voltin diagnosed bipolar affective disorder, manic, moderate on Axis I and deferred an Axis II diagnosis.  He rated Claimant's GAF at 65.  (Tr. at 157-58.)

On June 9, 2004, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium level work, reduced by an ability to only occasionally climb ladders, ropes and scaffolds and a need to avoid hazards.  (Tr. at 160-67.)

On June 12, 2004, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe.  (Tr. at 168-81.)

The record includes treatment notes from Dunbar Medical Associates dated September 26, 2002, through October 14, 2004.  On October 18, 2002, Claimant underwent a cervical MRI, which was negative.  (Tr. at 193.)  On September 26, 2002, Claimant reported she was involved in a motor vehicle accident two years earlier and had begun having headaches, which had improved.  Claimant complained of neck pain with radiation into the left shoulder.  (Tr. at 189.)  Claimant was diagnosed with depression/anxiety, neck pain and history of Guillain-Barre syndrome.  (Tr. at 189.)  On October 28, 2002, Claimant reported she was less anxious.  Claimant

had not begun taking Effexor because she could not afford it. Claimant reported her neck pain was much improved when she saw a chiropractor. (Tr. at 188.) On January 10, 2003, Claimant reported she was unable to tolerate Neurontin. On this visit, Claimant felt her chiropractor visits were making her neck pain worse. Claimant reported her depression and anxiety had improved on Effexor and Xanax. (Tr. at 188.) Claimant's assessment included parasthesis, Guillain-Barre syndrome sequella, headache, and anxiety and depression. The notes indicate that a brain MRI would be considered. (Tr. at 187.)

On March 23, 2004, Claimant reported she had lost her home recently and could not "get it together to go to work." (Tr. at 186.) Claimant reported crying spells, hopelessness and anhedonia. Claimant was diagnosed with depression/anxiety and restarted on Effexor and Xanax. (Tr. at 186.) On April 15, 2004, Claimant reported she was less anxious and had experienced improvement in her crying spells. However, Claimant reported she did not feel that she could return to work and had applied for disability. Claimant was instructed to continue Effexor for her depression and anxiety. Claimant also had a knot on her right knee. There was no edema and good range of motion in the knee. (Tr. at 185.)

On June 22, 2004, Claimant reported that she still felt depressed and anxious. Claimant was living with her mother, which was not an ideal situation. Claimant reported Effexor helped with

her depression.  Claimant complained that her knee pain was worse. She had no edema, good range of motion and no crepitation.  (Tr. at 184.)  Claimant was diagnosed with depression and anxiety and arthralgia.  (Tr. at 184.)  On September 2, 2004, Claimant reported that after her motor vehicle accident she had frequent neck pain, but now that pain is more localized to the mid back.  Claimant reported she was unable to perform household chores.  Claimant was neurologically intact. She had no edema in the extremities.  Her back was tender.  Claimant was diagnosed with neck pain, depression/anxiety and GERD.  (Tr. at 183.)

On October 14, 2004, Claimant reported she fell down stairs at a friend's house three days prior.  She was unconscious and experienced confusion after the fall.  Claimant complained of persistent severe headache following her fall.  Claimant's diagnoses included a closed head injury, back pain and depression/anxiety.  (Tr. at 182.)  On October 14, 2004, Claimant underwent a CT scan of the head, which was normal.  (Tr. at 192.) X-rays of the thoracic spine on October 14, 2004, showed that the thoracic vertebrae were preserved in height and alignment, there was mild anterior lipping in the upper thoracic spine, and the cervicothoracic junction was preserved.  There were no fractures seen.  (Tr. at 191.)

The record includes a summary of treatment dated October 26, 2004, from Kanawha Pastoral Counseling Center, which indicates that

9

Claimant was seen twelve times for counseling from April 14, 2004, though October 15, 2004. The summary indicates Claimant's goals included reducing anxiety and depression and improving self-esteem and self-reliance. Claimant's progress was fair. (Tr. at 196.) The record includes notes from Claimant's first visit on April 14, 2004, but does not contain the treatment notes that followed. On April 14, 2004, Claimant was diagnosed with generalized anxiety disorder and major depressive disorder, single episode, mild. Her GAF was rated at 41. (Tr. at 197.)

On January 8, 2005, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 203-16.)

On January 10, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant was limited to medium work, with a need to avoid concentrated exposure to extreme cold and vibration. (Tr. at 217-24.)

The record includes additional treatment notes from Dunbar Medical Associates dated November 16, 2004, through June 14, 2005. On November 16, 2004, Claimant complained of increased anxiety. Claimant was diagnosed with depression and anxiety and back and neck pain. (Tr. at 237.) On January 27, 2005, Claimant reported she had recently fractured her fibula. Claimant also was in a motor vehicle accident on January 6, 2005, when she fractured her

10

left humerus. Claimant complained of stress at home involving her mother. (Tr. at 236.) On April 12, 2005, Claimant reported feeling much worse since she stopped taking her Effexor. (Tr. at 235.) On June 14, 2005, Claimant continued to complain of depression and reported she no longer has any motivation. Claimant was prescribed a trial of Cymbalta and was instructed to continue Xanax. (Tr. at 234.)

The record includes additional evidence from Kanawha Pastoral Counseling Center. The record includes treatment notes dated October 29, 2004, November 29, 2004, December 20, 2004, April 7, 2005, June 27, 2005, June 29, 2005, July 13, 2005, and July 25, 2005. (Tr. at 240-43.) A closing summary dated February 14, 2005, indicates that Claimant attended fourteen sessions in which cognitive therapy was used to improve self-esteem and reduce anxiety and depression. Claimant's diagnoses included major depressive disorder, single episode, mild, and generalized anxiety disorder on Axis I and no Axis II diagnosis. Claimant's GAF began at 41 and was 45 on December 20, 2004. (Tr. at 238.) Claimant eventually dropped out of treatment. Her functioning at the time of closing was described as fair. (Tr. at 238.)

A second summary dated June 7, 2005, from Kanawha Pastoral Counseling Center indicates that Claimant was seen once since the closing summary on April 7, 2005. Claimant's commitment to reducing anxiety and depression and taking control of her life was

diligent and her progress was fair. (Tr. at 239.) As noted above, Claimant continued treatment from April 7, 2005, through July 25, 2005.

The record includes treatment notes from Claimant's chiropractor, Jeffrey B. Given, dated October 22, 2001, through December 2, 2002. (Tr. at 244-53.) X-rays of Claimant's neck and back were normal. (Tr. at 246.) Claimant also saw another chiropractor on October 27, 2000, related to injuries received in a car accident on October 6, 2000. (Tr. at 254-55.)

On December 3, 2004, Claimant reported to the emergency room with complaints following a fall a week earlier. She was diagnosed with a fracture of her right fibula. (Tr. at 259.)

On October 5, 2005, Elizabeth A. McClellan, M.D. evaluated Claimant. Claimant had mild psychomotor retardation. Her mood was anxious and depressed. Her affect was anxious, depressed, appropriate and mood congruent. Thought process was significant for mild flight of ideas. No loosening of associations. Mild paranoia was noted. Claimant had no auditory or visual hallucinations. Claimant's attention, concentration and memory were grossly within normal limits. Claimant's fund of knowledge was within normal limits, insight was poor to fair, while judgment was fair to good. (Tr. at 283.) Dr. McClellan diagnosed panic disorder with agoraphobia and bipolar II on Axis I and deferred an Axis II diagnosis. She rated Claimant's GAF at 45-50. (Tr. at

283.)

On October 18, 2005, Dr. McClellan spoke with Claimant's mother, who reported Claimant was taking too much Xanax and had threatened suicide. Dr. McClellan advised Claimant's mother to fill out an application for commitment. (Tr. at 286.) Dr. McClellan spoke with Dr. Lilly, Claimant's primary care physician. Dr. McClellan's treatment note indicates that Dr. Lilly later saw Claimant and reported she was not suicidal. (Tr. at 286.) On November 14, 2005, Claimant was attempting to taper off the Effexor, but had run out of it early. As a result, she had increased anxiety. Dr. McClellan had increased Geodon, and Claimant felt motivated and less shaky. Claimant refused to increase the Geodon despite much encouragement. Dr. McClellan indicated that Effexor could make her mood worse, with increased anxiety and cycling. Claimant had slightly disheveled hair, her speech was continuous but pressured. Dr. McClellan indicated she may have to refer Claimant to another therapist. Claimant was to return in two weeks to consider adding another mood stabilizer. (Tr. at 285.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in failing to find that Claimant's residuals from Guillain-Barre Syndrome, bipolar disorder and neck pain were severe impairments;

(2) the ALJ erred in finding Claimant's testimony not credible with regard to her psychiatric impairments and limitations; and (3) the ALJ erred in relying upon the vocational expert's response to an incomplete hypothetical question. (Pl.'s Br. at 6-15; Pl.'s Reply at 1-3.)

The Commissioner argues that (1) substantial evidence supports the ALJ's finding as to Claimant's severe and nonsevere impairments; (2) substantial evidence supports the ALJ's finding that Claimant's psychological complaints were only credible to the extent they would have prevented her from performing more than routine or repetitive work with only incidental public contact; and (3) the ALJ's hypothetical question to the vocational expert included all of the limitations that were supported by reliable evidence of record. (Def.'s Br. at 8-18.)

The court proposes that the presiding District Judge find that the ALJ's decision is not supported by substantial evidence because the ALJ failed to address whether Claimant's bipolar disorder was a severe mental impairment in keeping with the applicable regulations at 20 C.F.R. §§ 404.1520a and 416.920a (2006). Claimant was diagnosed by Dr. Voltin with bipolar I disorder and by Dr. McClellan, a treating source, with bipolar II disorder. In his decision, the ALJ noted the diagnosis by these physicians in evaluating the evidence (Tr. at 20-21), but determined that Claimant's only severe mental impairments were anxiety and

14

depression.  The ALJ's decision does not reflect a complete consideration of Claimant's mental impairments, including bipolar disorder, in keeping with the applicable regulations for the evaluation of mental impairments.

The court has considered the Commissioner's argument that "[t]he diagnostic label attached to Plaintiff's mental impairment is not dispositive" and that in any event, the ALJ's residual functional capacity finding adequately reflects the limitations caused by Claimant's mental impairments. (Def.'s Br. at 8.) Given the facts of the instant matter, the court finds the Commissioner's argument unconvincing.  Biploar I disorder involves alternating full-fledged manic and major depressive episodes beginning with depression and is characterized by at least one manic or excited period during its course.    See The Merck Manual 1539 (17th ed. 1999).  Bipolar II disorder involves depressive episodes that alternate with hypomanias.  Id.  "Symptoms of the depressive phase are similar to those of unipolar depression ... except that psychomotor retardation, hypersomnia, and, in extreme cases, stupor are more characteristic."  Id.  In short, while depression is certainly part of bipolar disorder, bipolar disorder, depression and anxiety are distinct mental impairments.  It does not appear from the ALJ's decision that he fully appreciated Claimant's diagnosis of bipolar disorder.

The court notes that Claimant was rated by her long-term

15

counselors as having a Global Assessment of Functioning (GAF) level of 41-50, indicating serious symptoms or serious impairment in social functioning. Furthermore, this issue is complicated by the fact that Claimant declined medical treatment recommended by Dr. McClellan, an issue which can be further addressed on remand.

Based on the above, the court proposes that the presiding District Judge remand this matter for further proceedings consistent with the court's recommendation herein. The court declines to address the remaining arguments raised by Claimant, as they can be addressed on remand.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge GRANT the Plaintiff's Motion for Judgment on the Pleadings to the extent she seeks remand and otherwise DENY Plaintiff's Motion, REVERSE the final decision of the Commissioner, and REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings

and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

January 10, 2008
    Date

Mary E. Stanley
United States Magistrate Judge